UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUNE PETROSKI, AS ADMINISTRATRIX of the ESTATE of THOMAS PETROSKI, JR.,DECEASED And THOMAS PETROSKI, AS ADMINISTRATOR OF ESTATE of THOMAS PETROSKI, JR.,DECEASED | : : : : : : |
| v. | : CIVIL ACTION NO. |
| CITY OF PHILADELPHIA And SADIE M. SMITH c/o City Solicitors Office And MICHELLE ROCHE c/o City Solicitors Office And RICHARD DAVIDSON EXECUTIVE CHIEF PHILADELPHIA FIRE DEPT. And CHRISTOPHER BALDINI, CITY OF PHILADELPHIA FIRE PARAMEDIC CAPTAIN | : : : ***JURY TRIAL DEMANDED*** : : : : : : : : : : |

**CIVIL ACTION COMPLAINT**

1.  This is an action for money damages brought pursuant to 42 U.S.C. Sec. 1983 and under the common law of the Commonwealth of Pennsylvania.

2.  This Court has jurisdiction of this action under 42 U.S.C. Sec. 1983 and 28 U.S.C. Sec. 1331. Plaintiff further invokes supplemental jurisdiction of this Court to hear and decide claims arising under state law.

**PARTIES**

3.  Plaintiffs **JUNE PETROSKI** and **THOMAS PETROSKI**, are the Co-Administrators of the Estate of their Deceased son Thomas Petroski, Jr., Deceased., which Administrators reside at 3224 Aramingo Avenue, Philadelphia, Pennsylvania.

4. Defendant is the **CITY OF PHILADELPHIA** a municipal corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an address of c/o City Law Department, 1515 Arch Street, 14th Floor, Philadelphia, Pennsylvania. Further Defendant City of Philadelphia is a city of the first class located in the County of Philadelphia, organized and operating pursuant to state and local laws, in its capacity as the employer of the defendant Philadelphia Emergency Medical Technicians and/or responders, with an address of c/o City Law Department, 1515 Arch Street in Philadelphia, Pennsylvania.

5. Defendant **SADIE M. SMITH**, at all times material hereto was a citizen of the Commonwealth of Pennsylvania and was an agent, ostensible agent, servant, worker and/or employee of Defendant City of Philadelphia and/or Defendant Philadelphia Fire Department Emergency Services Medical Services, with a principle place of business in care of the City of Philadelphia Solicitors Office at 1515 Arch Street, 14th Floor, Philadelphia, Pennsylvania and who was licensed certified or otherwise engaged in the practice of emergency medical services and transport on behalf of Defendant City of Philadelphia and/or Defendant Philadelphia Fire Department Medical Services.

6. Defendant **MICHELLE ROCHE**, at all times material hereto was a citizen of the Commonwealth of Pennsylvania and was an agent, ostensible agent, servant, worker and/or employee of Defendant City of Philadelphia through its Fire Department Emergency Services Medical Services, with a principle place of business in care of the City of Philadelphia Solicitors Office at 1515 Arch Street, 14th Floor, Philadelphia, Pennsylvania and who was licensed certified or otherwise engaged in the practice of emergency medical services and transport on behalf of Defendant City of Philadelphia and/or Defendant Philadelphia Fire Department Medical Services.

7. Defendant **RICHARD DAVIDSON, EXECUTIVE CHIEF OF THE PHILADELPHIA FIRE DEPARTMENT** (hereinafter "**CHIEF**"), who, at all times material hereto,

was the Executive Chief of the Philadelphia Fire Department, to whom the defendant, City of Philadelphia, had delegated responsibility for administering the day to day functions of the Emergency Medical Services Division and/or Unit supervising the activities of the Emergency Medical Services Personnel who, at all times relevant hereto, was acting within the course and scope of his employment as Executive Chief of the Philadelphia Fire Department discharging his duties as Executive Chief, with an address of c/o City Solicitor, 1515 Arch Street, 14th Street, Philadelphia, Pennsylvania.

8. Defendant **CHRISTOPHER BALDINI, CITY OF PHILADELPHIA FIRE DEPARTMENT PARAMEDIC CAPTAIN** (hereinafter "**CAPTAIN**"), who, at all times material hereto, was the Paramedic Captain of the Philadelphia Fire Department, to whom the defendant, City of Philadelphia, had delegated responsibility for administering the day to day functions of the Emergency Medical Services Division and/or Unit supervising the activities of the Emergency Medical Services Personnel who, at all times relevant hereto, was acting within the course and scope of his employment as Paramedic Captain of the Philadelphia Fire Department discharging his duties as Paramedic Captain, with an address of c/o City Solicitor, 1515 Arch Street, 14th Street, Philadelphia, Pennsylvania.

## FACTS

9. At all times material hereto, defendants, Sadie M. Smith and Michelle Roche, were Emergency Medical Technicians and/or Paramedics and were acting in their capacities as agents, servants, workman and employees of these entities under their direction and control and were acting pursuant to either official policy or the custom, practice and usage of the City of Philadelphia Fire Department, including Defendant Chief and Defendant Captain.

10. Defendant, City of Philadelphia, in this cause, acted through its agents, employees and servants who was or were the policymakers for the City of Philadelphia Fire Department including Defendant Chief and/or Defendant Captain and for its employees including defendants, Sadie M. Smith and Michelle Roche, along with other officers who were or

may have been involved in the untimely death of Decedent on October 14, 2012.

11. On October 14, 2012 at approximately 2:54 p.m., Emergency Medical Services were called to the home of the Decedent, Thomas Petroski, Jr. by his Administrators June and Thomas Petroski at 3224 Aramingo Avenue, in the City and County of Philadelphia, Commonwealth of Pennsylvania, because Decedent was having difficulty breathing due to asthma and requested that his mother call an ambulance. Decedent's mother called 911 at 2:54pm and reported that Decedent was having an asthma attack. Decedent was using an asthma nebulizer but it was not working.

12. At or about 3:00 pm a City of Philadelphia Fire Department Emergency Medical Services Unit #2 staffed by Defendant Sadie M. Smith and Defendant Michelle Roche passed by Decedents house so Decedent's sister went outside of the house and was waiving her arms to get the attention of the EMS vehicle.

13. Decedent's sister remained outside until the EMTSec.s/Paramedics arrived at the house and Decedent's sister reported that Decedent's lips were purple.

14. When Defendants Sadie M. Smith and Michelle Roche they went into Decedent's house with a "stair chair", a black bag and an Oxygen Tank, that was subsequently determined to be empty and without oxygen.

15. Defendants Sadie M. Smith and Michelle Roche directed Decedent to continue using his nebulizer to which command Decedent responded by nodding his head.

16. Defendants Sadie M. Smith and Michelle Roche attempted to use the oxygen tank only to determine that it was empty. Defendants Sadie M. Smith and Michelle Roche sent Decedent's sister's boyfriend, Mike Donnelly, out to the EMS truck to retrieve another oxygen tank during which time, Decedent's father was assisting Decedent with the nebulizer while Defendants, Smith & Roche, stood in place and waited for the new tank.

17. Once the new Oxygen Tank had been brought into Decedent's home Defendants Sadie M. Smith and Michelle Roche placed a plastic apparatus or mask over Decedent's face

but the plastic was sucking up Decedent's nose. Defendants Sadie M. Smith and Michelle Roche attempted, thereafter, to lift Decedent without success. Decedent weighed 156 pounds at the time of his death.

18.     Defendants, Smith and Roche, did not contact supervisors to request authorization to perform a tracheotomy, although they had the ability to do so.

19.     Defendants Sadie M. Smith and Michelle Roche were only able to move Decedent to the arm of the "stair chair". A neighbor, Bob Fletcher, came and with Decedent's father, lifted Decedent into the "stair chair". Defendants Sadie M. Smith and Michelle Roche, thereafter, could not get Decedent through the door of the house because Decedent's legs were spread. Once Decedent was collectively moved through the door, of the residence, Defendants Sadie M. Smith and Michelle Roche pulled out a gurney from the EMS vehicle and Decedent's father and either Defendant Sadie M. Smith or Defendant Michelle Roche put him on the stretcher and into the vehicle. Defendant Sadie M. Smith or Michelle Roche locked the rear door of the EMS vehicle.

27.     After placing decedent in the ambulance Medic 2 advised that they needed to wait for the Fire Truck to arrive and one of the Firemen would have to drive the vehicle to the hospital.

28.     During their treatment of the decedent Sadie M. Smith and Michelle Roche caused Decedent to sustain a tension pneumothorax which allows air to escape the ling and spread into the chest cavity.

29.     Asthmatic patients have difficulty expelling air and causing a tension pneumothorax is especially concerning. Though not documented in their report Medic 2 employed a King Airway tube while within the ambulance and administered mechanical ventilation which increased pressure within Decedent's chest cavity as air escaped his lung and filled his chest.

30.     Tension pneumothorax left untreated can cause lethal cardiac compromise as

too much pressure builds up within the chest cavity and this pressure stops the heart from beating.

31. Tension pneumothorax results in a rhythm of the heart known as PEA, or pulseless electrical activity, as the heart is under too much pressure to contract and pump blood and circulation stops while electrical activity of the heart continues.

32. While within the Medic 2 Ambulance Decedent was noted by its crew to be in PEA and they confirmed that he was pulseless but offered no measures that would allow the escape of pressure from his chest.

33. When tension pneumothorax occurs and air escapes the lung(s) and compresses the heart a condition known as traumatic arrest can occur.

34. Traumatic arrest is not the result of asthma the condition Medic 2 was called to treat.

35. The treatment of PEA requires thoracotomy to allow air to escape the chest cavity a concomitant pressure decrease and the heart to begin beating again.

36. Although Decedent was one mile away from a hospital and while he was loaded within the ambulance by 3:03pm the ambulance did not leave for the hospital until 3:16pm during which time his PEA and lack of circulation persisted as the pressure within his chest cavity persisted and precluded circulation.

37. Since the heart is already hypovolemic administration of inotropes and vasopressors such as adrenaline are contraindicated and when administered cause myocardial hypoxia.

38. In their treatment of Decedent, Medic 2, staffed by Sadie M. Smith and Michelle Roche, administered epinephrine, which is adrenaline, to Decedent and the combination of causing his traumatic arrest and the administration of adrenaline caused severe insult to the state of Decedent's heart created by Medic 2 .

39. Upon his arrival to Episcopal Hospital the PEA rhythm was noted a thoracotomy

was performed and a positive rush of air was noted and his heart rhythm left PEA but too much time had passed and he could not be resuscitated .

40. As a direct and proximate result of Defendants Sadie M. Smith and Michelle Roche actions Decedent Thomas Petroski, Jr. died on October 14, 2012.

41. Plaintiffs are the only legal heirs of Decedent and no prior actions have been brought upon the matters complained of in this action.

42. As a direct and proximate result of the said acts or failure to act, the Decedent and his Estate suffered injuries and damages including but not limited to the following:

    a) violation of his constitutional right to life;

    b) violation of his right to be free from pain and suffering;

    c) physical pain and suffering;

    e) emotional upset and trauma;

    f) expenses in the administration of decedent's estate and funeral expenses *and*

    g) loss of earnings and loss of net earnings to his heirs.

    h) all damages allowed by the Pennsylvania Wrongful Death Act;

    i)all damages allowed by the Pennsylvania Survival Act

    j) attorneys fees and costs of the action

All entitling Plaintiffs to compensatory and punitive damages as set forth below

## COUNT I

**42 U.S.C.Sec. 1983 AGAINST DEFENDANTS SADIE M. SMITH and MICHELLE ROCHE**

43. Paragraphs 1 through 42 are incorporated herein by reference as though fully set forth at length.

44. Plaintiff Administrators of the Estate of Thomas Petroski, Jr., Deceased, claim

damages against Defendants Sadie M. Smith and Michelle Roche individually and in their official capacities for the injuries and damages set forth above under 42 U.S.C. Sec. 1983 for violation of Plaintiff Decedent's substantive due process rights while acting under color of state law.

45. The harm that befell PlaintiffSec.s decedent from the actions of Medic 2 was foreseeable and direct.

46. The actions of Medic 2 in entering a home with an empty oxygen tank, in initiating treatment which caused traumatic arrest, in failing to move an ambulance to a facility where a thoracotomy could be performed and in administering epinephrine to a hypovalimic cardiovascular system, continuing mechanical ventilation in the face of a PEA rhythm, failing to contact medical command and otherwise acting to cause harm to Decedent shocks the conscience.

47. A relationship existed between Decedent and Medic 2 which was acting under color of state law and this relationship including patient/caregiver and healthcare consumer included the expectation that Medic 2/City of Philadelphia would be paid for its services and in fact generated a bill to Decedent for $1,180.00.

48. The staff of Medic 2, Defendants Sadie M. Smith and Michelle Roche, affirmatively used their authority to actually create a danger to Decedent as described in paragraphs 14 to 40 which are incorporated here by reference, and or rendered him more vulnerable to danger than in the absence of the treatment they rendered which caused his death.

## COUNT II

### FEDERAL CIVIL RIGHTS VIOLATIONS, 42 U.S.C, Sec. 1983 CLAIM AGAINST DEFENDANT, CITY OF PHILADELPHIA AND DEFENDANT EXECUTIVE AND DEFENDANT CAPTAIN

49. Paragraphs 1 through 42 are incorporated here by reference as though fully set forth at length.

50. As a direct and proximate result of defendants conduct committed under color of state law, Defendants deprived plaintiff, Thomas Petroski, Jr., Deceased, of his rights privileges and immunities under the laws and Constitution of the United States, plaintiff's rights to life, secure in his person and property and to due process of law.  As a result, Plaintiff Decedent suffered harm in violation of his rights under the law and Constitution of the United States, in particular 42 U.S.C. Sec. 1983.

51. As a direct and proximate result of the acts of all defendants, Plaintiff Decedent died.

52. It was the policy and/or custom of the defendant, City of Philadelphia and Philadelphia Fire Department Emergency Medical Services, Defendant Executive and Defendant Captain to tolerate, condone and, through inaction, or action encourage the unconstitutional conduct of emergency medical technicians including most especially Defendants Sadie M. Smith and Michelle Roche, who Defendants knew had committed similar actions or inactions upon individuals while acting under the authority of their office and under color of state law.

53. The defendant, City of Philadelphia, Philadelphia Fire Department Emergency Medical Services, Defendant Executive and Defendant Captain have encouraged, tolerated, ratified and have been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

> a. the abuse of powers, including but not limited to creating a policy of failing to pre check oxygen tanks, understand the danger of tension pneumothorax, understand the concept of traumatic arrest, understand the need for urgent thoracotomy, and understand the effect of epinephrine on a hypovolemic cardiovascular system thereby depriving of citizens of their due process rights;

> b. the failure of emergency medical technicians to follow established policies and procedures set forth in the Pennsylvania Statewide Advanced Life Support Protocols instituted ratified and codified by the Commonwealth of Pennsylvania Department of Health;

c. the failure of emergency medical technicians to follow established policies and procedures set forth in the Pennsylvania Statewide Basic Life Support Protocols instituted ratified and codified by the Commonwealth of Pennsylvania Department of Health including Section 222- regarding proper procedure for Ventilation Via Endotracheal Tube or Alternative Airway Assisting with ALS Procedures-State BLS Protocols;

d. proper procedures, in the manner in which injured persons are treated and cared for so that they are not subject to death at the hands of emergency medical technicians that: i) employees of Defendant City of Philadelphia, and Fire Department Medical Services including the defendant emergency medical responders in this case, can be properly trained, supervised and disciplined for conduct related to the performance of their duties; ii) Defendant City of Philadelphia and Philadelphia Fire Department Medical Services can properly monitor the conduct and performance of their employees to assure compliance with the protocols, regulations, laws and Constitutions of the United States and the Commonwealth of Pennsylvania; and iii) citizens such as Plaintiffs can determine the identities of those employees who subject them to constitutional violations under such circumstances as presented herein and thereby seek vindication of their constitutional and statutory rights; and

e. The failure of emergency medical technicians to prevent, deter, report or take action against the unlawful conduct of other emergency medical technicians under such circumstances as presented herein.

54. Defendant, City of Philadelphia, Philadelphia Fire Department Emergency Medical Services, Defendant Executive and Defendant Captain failed to properly sanction or discipline the emergency medical technicians, who are aware of and subsequently conceal and/or aid and abet violations of constitutional rights of injured and ill citizens by other emergency medical technicians, thereby causing and encouraging, including the defendant emergency medical technicians in this case, to violate the rights of citizens such as the Decedent Plaintiff.

55. By these actions, all defendants, acting in concert and conspiracy, have deprived the Plaintiff of rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. Sec.1983, the most basic of which is the right to life.

56. It was the policy or custom of the defendant, City of Philadelphia, and Philadelphia Fire Department Emergency Medical Services, Defendant Executive and

Defendant Captain to inadequately supervise and train its emergency medical technicians in the Commonwealth of Pennsylvania Department of Health Basic Life Support Protocols thereby failing to adequately discourage further constitutional violations on the part of its emergency medical technicians.

57. The defendant, City of Philadelphia, and Philadelphia Fire Department Emergency Medical Services, Defendant Executive and Defendant Captain failed to properly re-train, sanction or discipline emergency medical personnel, who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Philadelphia emergency medical technicians, thereby causing and encouraging personnel, including the defendant emergency medical technicians in this case, to violate the rights of citizens such as the Decedent Plaintiff.

58. As a result of the above described policies and customs, emergency medical technicians employed by the defendant, City of Philadelphia, Philadelphia Fire Department Emergency Medical Services, Defendant Executive and Defendant Captain, including but not limited to the individual defendants herein, believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

59. The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the City of Philadelphia, Philadelphia Fire Department Emergency Medical Services, Defendant Executive and Defendant Captain to the constitutional rights of injured and infirmed persons within the City of Philadelphia and were the cause of the violations of Decedent's rights as described herein and which actions are shocking to the conscience.

**COUNT III**
**42 U.S.C. Sec. 1983 CLAIM AGAINST DEFENDANTS,**
**CITY OF PHILADELPHIA AND DEFENDANT EXECUTIVE AND DEFENDANT CAPTAIN**

60. Paragraphs 1 through 42 are incorporated here by reference as though fully set forth at length.

61. As a direct and proximate result of Defendants' conduct committed under color of state law, Plaintiff Decedent was deprived of his right to life and to be secure in his person and property and to due process of law. As a result, Decedent Plaintiff suffered harm in violation of his rights under the law and Constitution of the United States, in particular 42 U.S.C. Sec. 1983.

62. As a direct and proximate result of the acts of all defendants, Decedent Plaintiff died.

63. It was the policy and/or custom of the defendant, City of Philadelphia, Defendant Executive and Defendant Captain, to tolerate, condone and, through inaction, encourage the unconstitutional conduct of emergency medical technicians including most especially the

emergency medical technicians and paramedics involved in the death of the Decedent Plaintiff, including but not limited to Defendants Sadie M. Smith and Michelle Roche, who defendants, knew had committed similar actions or inactions upon individuals while acting under the authority of their office and under color of state law.

64. It was the policy or custom of the defendant, City of Philadelphia, Philadelphia Fire Department Emergency Medical Services, Defendant Executive and Defendant Captain, to inadequately supervise and train its emergency medical technicians and paramedics thereby failing to adequately discourage further constitutional violations on the part of its employees.

65. The City of Philadelphia, Defendant Executive and Defendant Captain failed to properly sanction or discipline the emergency medical technicians, who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other emergency medical technicians and paramedics, thereby causing and encouraging emergency medical technicians and paramedics, including the defendant technicians in this case, to violate the rights of citizens such as the Decedent Plaintiff.

66. As a result of the above described policies and customs, emergency medical technicians employed by the defendants, City of Philadelphia, Philadelphia Fire Department Emergency Medical Services, Defendant Executive and Defendant Captain, including the individual defendants herein, believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would be tolerated.

67. The above described policies and customs demonstrated a deliberate indifference on the part of the policymakers of the City of Philadelphia, Defendant Executive and Defendant Captain, including Defendants herein to the constitutional rights of injured and infirmed persons within the City of Philadelphia and were the cause of the violations of Decedent Plaintiff's rights as described herein.

## COUNT IV
### 42 U.S.C. Sec. 1983 CLAIM AGAINST DEFENDANT, CITY OF PHILADELPHIA AND DEFENDANT EXECUTIVE AND DEFENDANT CAPTAIN

68. Plaintiffs incorporate paragraphs 1 through 42 of their complaint by reference.

69. Defendants were charged with the responsibility for final policy making authority for the emergency medical technicians and paramedics and also with supervising the actions of those employees including the defendants named herein.

70. Defendants were derelict in their duties in formulating and exercising policies regarding the implementation and supervision of the emergency technicians and paramedics and which dereliction condoned constitutional violations such as complained of by the Administrators of the Plaintiff Decedents Estate such that these violations constituted a custom, policy or practice of the defendants.

## COUNT V
### SUPPLEMENTAL STATE CLAIMS – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

71. Plaintiffs incorporate by reference paragraphs 1 through 42 of their complaint.

72. Plaintiffs were physically present in the residence on October 14, 2012.

73. The acts and conduct of the Defendants in this cause of action constitute negligent infliction of emotional distress under the laws of the Commonwealth of Pennsylvania and this Court has supplemental jurisdiction to hear and adjudicate these claims.

## COUNT VI
### SUPPLEMENTAL STATE CLAIMS – AGAINST DEFENDANTS SADIE M. SMITH and MICHELLE ROCHE

74. Plaintiffs incorporate by reference paragraphs 1 through 42 of their complaint.

75. The actions of Defendants Smith and Roche as above described constitute willful misconduct under 42 Pa C.S. Sec. 8550.

76. Plaintiffs claim all damages allowable under the Pennsylvania Wrongful Death Act and Pennsylvania Survival Act as well as exemplary damages.

## COUNT VI

**SUPPLEMENTAL STATE CLAIMS-- CITY OF PHILADELPHIA**

77. Plaintiffs incorporate by reference paragraphs 1 through 42 of their complaint.

78. Defendant City of Philadelphia imposed a charge for EMS services rendered to Decedent and in so doing waived immunity.

79. Defendant City of Philadelphia is vicariously liable for the acts of Defendants Smith and Roche.

80. Plaintiffs claim all damages allowable under the Pennsylvania Wrongful Death Act and Pennsylvania Survival Act as well as exemplary damages

WHEREFORE, the Administrators of the Plaintiff Decedent's Estate requests that the Court:

a) award compensatory damages to Plaintiff Decedents Estate against the defendants jointly and severally;

b) award exemplary or punitive damages against all defendants;

c) award reasonable costs and attorney's fees to the Estate of the Decedent Plaintiff; and

d) award such other relief as the Court may deem appropriate.

JAFFE & HOUGH

By:___trh4061
   TIMOTHY R. HOUGH, ESQ.
   Attorney for plaintiff
   I.D. # 40898
   JAFFE & HOUGH
   1907 Two Penn Center Plaza
   15th Street & JFK Blvd.
   Philadelphia, PA 19102
   (215) 564-5200